1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                         EASTERN DISTRICT OF CALIFORNIA

9

10   TERRY MORELAND,                        No.  1:14-cv-01836 JAM JLT

11              Plaintiff,

12        v.                                **ORDER GRANTING DEFENDANTS'
                                            MOTION TO DISMISS, GRANTING**
13   U.S. BANK, N.A. AS TRUSTEE             **DEFENDANTS' MOTION TO EXPUNGE**
     FOR LB-UBS COMMERCIAL                  **LIS PENDENS, AND DENYING**
14   MORTGAGE TRUST 2004-C6                 **COUNTER-DEFENDANTS' MOTIONS TO**
     COMMERCIAL MORTGAGE PASS-              **DISMISS**
15   THROUGH CERTIFICATES SERIES
     2004-C6; LB-UBS 2004-C6
16   STOCKDALE OFFICE LIMITED
     PARTNERSHIP; LB-UBS STOCKDALE
17   OFFICE GP; LNR PARTNERS
     CALIFORNIA MANAGER, LLC; LNR
18   PARTNERS, LLC, and DOES 1
     THROUGH 10, inclusive,
19
                Defendants.
20

21
     LBUBS 2004-C6 STOCKDALE
22   OFFICE LIMITED PARTNERSHIP, a
     Delaware limited partnership,
23
                Counter-Claimant,
24
          v.
25
     TERRY L. MORELAND, an
26   individual, and PEGGY J.
     MORELAND, an individual,
27
                Counter-Defendants.
28
                                     1

1   This matter is before the Court on Defendants U.S. Bank,

2   N.A., as trustee for LB-UBS Commercial Mortgage Trust 2004-C6

3   Commercial Mortgage Pass-through Certificates Series 2006-C6, LB-

4   UBS 2004-C6 Stockdale Office Limited Partnership, LB-UBS

5   Stockdale Office GP, LNR Partners California Manager, LLC, and

6   LNR Partners, LLC's ("Defendants") Motion to Dismiss (Doc. #3)

7   Plaintiff Terry Moreland's ("Plaintiff") Complaint (Doc. #1), and

8   Defendants' Motion to Expunge Lis Pendens (Doc. #5).  Plaintiff

9   opposed Defendants' Motion to Dismiss (Doc. #43) and Defendants'

10  Motion to Expunge (Doc. #44).  Defendants replied to both

11  oppositions (Doc. #45; Doc. #47).  For the following reasons,

12  Defendants' Motion to Dismiss is granted without leave to amend,

13  and Defendants' Motion to Expunge is granted.

14  Also before the Court are Counter-Defendant Terry Moreland's

15  Motion to Dismiss (Doc. #19) and Counter-Defendant Peggy

16  Moreland's Motion to Dismiss (Doc. #34) Counter-Claimant LBUBS

17  2004-C6 Stockdale Office Limited Partnership's ("Counter-

18  Claimant") Counterclaim (Doc. #9).  Counter-Claimant opposed both

19  motions to dismiss (Doc. #50; Doc. #52).  Neither Counter-

20  Defendant filed a reply.  For the following reasons, Counter-

21  Defendants' motions to dismiss are denied.[1]

22

23  I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

24  On August 2, 2004, UBS Real Estate Investments, Inc.

25  ("Original Lender") made a loan to Stockdale Tower I, LLC

26

27  [1] These motions were determined to be suitable for decision
    without oral argument.  E.D. Cal. L.R. 230(g).  The hearings
28  were scheduled for March 25, 2015 and April 8, 2015.

1  ("Borrower") in the amount of $24,000,000 ("the Loan").   In

2  connection to the Loan, Borrower executed a Deed of Trust Note

3  and a Deed of Trust (collectively, "Loan Documents"), which

4  encumbered the commercial office building located at 5060

5  California Avenue, Bakersfield, California ("Stockdale Tower").

6  DRJN, Ex. 1 and 2.

7      Soon thereafter, the Loan was transferred from Original

8  Lender to a real estate mortgage investment conduit ("REMIC")

9  trust, LaSalle Bank National Association, in its capacity as

10  trustee for the registered holders of LB-UBS Commercial Mortgage

11  Trust 2004-C6, Commercial Mortgage-Pass Through Certificates,

12  Series 2004-C6 ("the Trust").   Compl. Ex. 1.   For ease of

13  reference, this transfer is hereinafter referred to as "the 2004

14  transfer."

15      In connection with the 2004 transfer, the Loan was

16  securitized pursuant to a pooling and servicing agreement ("the

17  PSA").   Compl. ¶ 1; DRJN, Ex. 3.   The parties to the PSA were as

18  follows: (1) LaSalle Bank National Association, in its capacity

19  as trustee; (2) Structured Asset Securities Corporation II, as

20  depositor ("Depositor"); (3) Lennar Partners, Inc., as special

21  servicer; (4) Wachovia Bank, National Association, as master

22  servicer; and (5) ABN Amro Bank, N.V., as fiscal agent.

23      The PSA purports to create a REMIC trust, consisting, in

24  part, of mortgage loans purchased from Original Lender.   Section

25  2.01(a) of the PSA provides as follows:

26      "[t]he Depositor, concurrently with the execution and
       delivery hereof, does hereby assign, sell, transfer,
27      set over and otherwise convey to the Trustee in trust,
       without recourse, for the benefit of the
28      Certificateholders, all the right, title and interest

3

1         of the Depositor in, to, and under (i) the Trust
        Mortgage Loans, (ii) the UBS/Depositor Mortgage Loan
2         Purchase Agreement, (iii) the respective Co-Lender
        Agreements; and (iv) all other assets included or to be
3         included in the Trust Fund."   DRJN, Ex. 3.

4 Section 2.01(b) of the PSA further provides that:

5         "[i]n connection with the Depositor's assignment
        pursuant to Section 2.01(a) above, . . . the UBS
6         Mortgage Loan Seller has (pursuant to the UBS/Depositor
        Mortgage Loan Purchase Agreement) agreed, in the case
7         of each UBS Trust Mortgage Loan, to deliver to and
        deposit with, on or before the Closing Date: (i) the
8         Trustee or a Custodian appointed thereby, the Mortgage
        File for such Trust Mortgage Loan."   DRJN, Ex. 3.
9

10 Section 1.01 of the PSA defines "Mortgage File" as including,

11 among others, the following two documents:

12         "the original executed Mortgage Note for such Trust
        Mortgage Loan, endorsed (without recourse,
13         representation, or warranty, express or implied) to the
        order of 'LaSalle Bank National Association, as trustee
14         for the registered holders of LB-UBS Commercial
        Mortgage Trust 2004-C6, Commercial Mortgage Pass-
15         Through Certificates, Series 2004-C6' or in blank . . .
        [and] an original executed assignment [of the Deed of
16         Trust] in favor of 'LaSalle Bank National Association,
        in its capacity as trustee for the registered holders
17         of LB-UBS Commercial Mortgage Trust 2004-C6, Commercial
        Mortgage Pass-Through Certificates, Series 2004-C6.'"
18         DJRN, Ex. 3.

19      In June 2010, the Trust assigned its rights under the Loan

20 to Defendant LBUBS 2004-C6 Stockdale Office Limited Partnership

21 ("Defendant Owner").  Compl., Ex. 2.  On August 3, 2010,

22 Defendant Owner caused a Notice of Default and Election to Sell

23 under Deed of Trust ("Notice of Default") to be recorded against

24 Borrower, due to its failure to make timely payments under the

25 Loan.  Compl., Ex. 3.  In February 2013, Defendant Owner

26 completed a non-judicial foreclosure proceeding against Stockdale

27 Tower.  Defendant Owner was the successful bidder at the

28 Trustee's Sale with a credit bid of $20,000,000, leaving an

1  unpaid balance owing on the Loan of $11,306,472.73.  DRJN, Ex. 4.

2      In January 2013, Plaintiff and Borrower filed a lawsuit

3  against Defendants in state court, alleging that Defendants had

4  interfered with Borrower's ability to pay off the Loan.  DRJN,

5  Ex. 5.  In February 2013, Defendant Owner filed an action against

6  Plaintiff and his wife to collect the unpaid balance owing on the

7  Loan, pursuant to the personal guaranty that Plaintiff and his

8  wife had executed in connection with the Loan.  DRJN, Ex 6.  In

9  August 2013, Plaintiff and Defendants executed a written

10 settlement agreement, which contained a mutual general release as

11 to all known and unknown claims between the parties to the

12 agreement.  DRJN, Ex. 7.

13     On October 14, 2014, Plaintiff filed the Complaint in Kern

14 County Superior Court.  On November 21, 2014, Defendants removed

15 the matter to this Court.  On December 3, 2014, Defendant Owner

16 filed the Counter-Claim against Terry Moreland and Peggy

17 Moreland.

18

19                    II.  OPINION

20     A.   Judicial Notice

21          1.   Legal Standard

22     Generally, the Court may not consider material beyond the

23 pleadings in ruling on a motion to dismiss.  However, the Court

24 may take judicial notice of matters of public record, provided

25 that they are not subject to reasonable dispute.  See, e.g.,

26 Sherman v. Stryker Corp., 2009 WL 2241664 at *2 (C.D. Cal. 2009)

27 (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

28 2001) and Fed. R. Evid. 201).  The Court may also take judicial

5

1  notice of documents whose "authenticity . . . is not contested"

2  and which are referenced in the complaint.  Lee v. City of Los

3  Angeles, 250 F.3d 668, 688 (9th Cir. 2001); In re Calpine Corp.

4  Sec. Litig., 288 F. Supp. 2d 1054, 1075 (N.D. Cal. 2003).

5              2.    Defendants' Request for Judicial Notice

6       In support of their motion to dismiss, Defendants request

7  that the Court take judicial notice of seven documents.

8  Defendants' Request for Judicial Notice ("DRJN"), Doc. #4.

9  Specifically, Defendants request judicial notice of: (1) a Deed

10  of Trust Note, dated August 2, 2004, executed by Stockdale Tower

11  I, LLC; (2) a Deed of Trust, recorded in Kern County, California

12  on August 3, 2004; (3) pertinent pages of the Pooling and

13  Servicing Agreement, referenced in the Complaint; (4) a Trustee's

14  Deed Upon Sale, recorded in Kern County, California on February

15  6, 2013; (5) a complaint filed by Stockdale Tower I, LLC in Kern

16  County Superior Court on January 11, 2013; (6) a complaint filed

17  by LBUBS 2004-C6 Stockdale Office Limited Partnership in this

18  Court on February 26, 2013; and (7) the Settlement Agreement and

19  Mutual General Release, referenced in the Complaint.

20       Additionally, in support of their motion to expunge the lis

21  pendens, Defendants request that the Court take judicial notice

22  of three documents.  Defendants' Request for Judicial Notice in

23  support of the Motion to Expunge ("DRJN Mot. to Expunge"), Doc.

24  #6.  Specifically, Defendants request judicial notice of: (1)

25  pertinent pages of the Pooling and Servicing Agreement,

26  referenced in the Complaint; (2) the declaration of Don Kerr,

27  filed on May 23, 2012, in the United States Bankruptcy Court for

28  the Eastern District of California; and (3) a Trustee's Deed Upon

1    Sale, recorded in Kern County, California on February 6, 2013.

2         Plaintiff objects to both of these requests, arguing that

3    they relate to matters outside the pleadings, and that judicial

4    notice of the facts contained within the documents would be

5    improper.  Opp. to MTD at 3.

6         All of these documents are proper subjects of judicial

7    notice.  The August 2, 2004 Deed of Trust Note, the Pooling and

8    Servicing Agreement, and the Settlement Agreement and Mutual

9    General Release are all referenced in the complaint.  Compl.

10   ¶¶ 1, 3, 29.  The remaining documents are all public records,

11   having been either filed as public court records or recorded in a

12   county recorder's office.  Accordingly, Defendants' requests for

13   judicial notice (Doc. #4; Doc. #6) are GRANTED in their entirety.

14   However, as urged by Plaintiff, the Court merely takes notice of

15   the *existence* of these documents, not the truth of any facts

16   contained therein.

17            3.    Counter-Defendants' Request for Judicial Notice

18        In support of their motions to dismiss, Counter-Defendants

19   request that the Court take judicial notice of eight documents.

20   Counter-Defendants' Request for Judicial Notice ("CDRJN"), Doc.

21   #35; Doc. #20.  Specifically, Counter-Defendants request judicial

22   notice of the following documents: (1) a "Mortgage Loan Purchase

23   Agreement;" (2) the Pooling and Servicing agreement, referenced

24   in the Counter-Complaint; (3) an underwriting agreement; (4) a B5

25   prospectus; (5) an assignment of deed of trust, recorded in Kern

26   County, California on December 13, 2004; (6) an assignment of

27   deed of trust, recorded in Kern County, California on June 1,

28   2010; (7) the state-court complaint originally filed by Plaintiff

7

1    in this action; and (8) a document identified by Counter-

2    Defendants as "Loan Level Files as published by US Bank."   CDRJN

3    at 2.

4         With regard to the state court complaint filed by Plaintiff

5    in this action, this document is already part of the record in

6    this case, and the request for judicial notice is unnecessary and

7    DENIED.   With regard to the Pooling and Servicing Agreement, this

8    document is referenced in Counter-Claimant's complaint, and

9    Counter-Defendant's request is GRANTED.   With regard to the two

10   assignments of deed of trust, these matters are public documents

11   obtained from a county recorder's office, and the request for

12   judicial notice is GRANTED.   With regard to the remaining

13   documents – the Mortgage Loan Purchase Agreement, the

14   underwriting agreement, the B5 prospectus, and the document

15   identified as "Loan Level Files as published by US Bank" –

16   Counter-Defendants have not made an adequate showing that they

17   are public records or explained their source, and the request for

18   judicial notice is DENIED.

19        B.   Analysis

20             1.   Defendants' Motion to Dismiss

21                  a.   Plaintiff's Challenge to the PSA

22        Plaintiff's overarching argument, upon which each of his

23   causes of action rests, is that the 2004 transfer was ineffective

24   because Depositor failed to obtain a "beneficial interest in the

25   loan before it was assigned to the trust."   Opp. to MTD at 9.

26   According to Plaintiff, the failure of Original Lender to

27   transfer a recorded assignment of the Loan Documents to Depositor

28   was in violation of "the trust's own law and the law of the state

1   of New York and the laws of the Internal Revenue Code."  Opp. to

2   MTD at 9.  Plaintiff argues that, due to this alleged flaw in the

3   2004 transfer, Defendant Owner "did not acquire any beneficial

4   interest by the sham assignment [during the 2010 transfer] and

5   thus lacked any authority to execute, or direct to execute, the

6   Notice of Default."  Compl. ¶ 11.

7        Plaintiff's argument is flawed in two ways.  First,

8   Plaintiff lacks standing to challenge the validity of the 2004

9   transfer, as he was not a party to the PSA.  See, e.g. Jenkins v.

10  JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 515 (2013)

11  ("As an unrelated third party to the alleged securitization . . .

12  Jenkins lacks standing to enforce any agreements, including the

13  investment trust's pooling and servicing agreement, relating to

14  such transactions).  Although one California court had previously

15  indicated that a borrower in Plaintiff's shoes might have

16  standing to challenge an allegedly invalid transfer to a REMIC

17  trust (Glaski v. Bank of Am., Nat'l Ass'n, 218 Cal.App.4th 1079,

18  1099 (2013)), the Ninth Circuit recently rejected this view.  In

19  re Davies, 565 F. App'x 630, 633 (9th Cir. 2014).  In Davies, the

20  Ninth Circuit noted that "California courts have divided over

21  this issue," but concluded that "the weight of authority holds

22  that debtors in Davies' shoes – who are not parties to the

23  pooling and servicing agreements – cannot challenge them."

24  Davies, 565 F. App'x. at 633.  Accordingly, under Davies,

25  Plaintiff lacks standing to challenge the transfer made pursuant

26  to the PSA, unless he can establish that he was a party to that

27  agreement.

28        Plaintiff does not – and cannot – argue that he was a

signatory to the PSA.  Opp. to MTD at 7.  Rather, Plaintiff

alleges that he was a third-party "intended beneficiary" to the

PSA.  Compl. ¶ 4.  Under California law, a "contract made solely

for the benefit of the contracting parties cannot be enforced by

a stranger or one who stands to benefit merely incidentally by

its performance." Gordon Bldg. Corp. v. Gibraltar Sav. & Loan

Ass'n, 247 Cal.App.2d 1, 8 (1966).  However, a third party has

standing to sue as a "contract beneficiary where the contracting

parties . . . intended to benefit that individual, an intent

which must appear in the terms of the agreement." Principal Mut.

Life Ins. Co. v. Vars, Pave, McCord & Freedman, 65 Cal.App.4th

1469, 1486 (1998).  Although Plaintiff contends that the Court

must also consider the "surrounding circumstances" of the PSA, in

addition to its express terms, in determining the intent of the

contracting parties, the plain language of the PSA makes this

dispute academic.  Opp. to MTD at 17 (citing Septembertide Pub.,

B.V. v. Stein & Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989)).

Section 11.09 of the PSA ("Successors and Assigns;

Beneficiaries") expressly enumerates a number of intended third-

party beneficiaries, none of whom are Plaintiff or Borrower.

DRJN, Ex. 3.  The last sentence of Section 11.09 reads as

follows: "No other Person, including any Mortgagor, shall be

entitled to any benefit or equitable right, remedy or claim under

this Agreement."  DRJN, Ex. 3.  It is clear that the contracting

parties to the PSA did not intend for Borrower (or Plaintiff, as

a member of Borrower) to be a third-party beneficiary of the

agreement.  Accordingly, Plaintiff lacks standing to challenge

1  the validity of any assignments made pursuant to the PSA.[2]

2      Moreover, Plaintiff's central argument – that the assignment

3  to the Trust was invalid – fails on the merits.  As quoted above,

4  Section 2.01(a) of the PSA provides that Depositor "does hereby

5  assign, sell, transfer, set over and otherwise convey to the

6  Trustee in trust . . . all the right, title and interest of the

7  Depositor in, to, and under . . . the Trust Mortgage Loans[.]"

8  DRJN, Ex. 3.  Immediately thereafter, Section 2.01(b) of the PSA

9  provides that "the UBS Mortgage Loan Seller has (pursuant to the

10  UBS/Depositor Mortgage Loan Purchase Agreement) agreed, in the

11  case of each UBS Trust Mortgage Loan, to deliver to and deposit

12  with, on or before the Closing Date: (i) the Trustee or a

13  Custodian appointed thereby, the Mortgage File for such Trust

14  Mortgage Loan."  DRJN, Ex. 3.  In other words, Depositor and

15  Original Lender reached a separate agreement – referred to in the

16  PSA as the "UBS/Depositor Mortgage Loan Purchase Agreement" – in

17  which Original Lender agreed to deliver the "Mortgage File" for

18  Plaintiff's Loan.  DRJN, Ex. 3.  As defined in Section 1.01 of

19  the PSA, the "Mortgage File" includes (1) the original executed

20  Mortgage Note on Plaintiff's Loan, endorsed to the Trust, and

21  (2) an original executed assignment of the Deed of Trust on

22

23  [2] Briefly, the Court makes note of Plaintiff's empty assurances
   that "there are volumes of case law that support Plaintiff's
24  allegation that he is [a third-party intended beneficiary] to the
   PSA."  Opp. to MTD at 8.  This statement is especially unhelpful
25  given Plaintiff's failure to cite any specific legal authority in
   support of this proposition, instead pointing generally to
26  "[c]ontrolling legal authority establishing that mortgagors are
   third-party beneficiaries of PSA's are found in the Restatement
27  Contracts (Second), as well as New York and Federal case law."
   Opp. to Mot. at 8.

28

1   Stockdale Tower, also endorsed to the Trust.

2       Thus, although Original Lender did not make an assignment of

3   Plaintiff's Loan Documents to Depositor, the PSA – read as a

4   whole and in conjunction with the UBS/Depositor Mortgage Loan

5   Purchase Agreement – provided for Original Lender to make this

6   assignment directly to the Trust, in effect cutting out Depositor

7   as a middle-man.   Plaintiff's contention appears to be that this

8   was improper, and violated "the trust's own law and the law of

9   the state of New York and the laws of the Internal Revenue Code."

10  Opp. to MTD at 9.   It is unclear what Plaintiff refers to as "the

11  trust's own law," but the transfer of Plaintiff's Loan Documents

12  complied with the procedure set forth in the PSA.   See Compl.,

13  Ex. 1 (Assignment of Deed of Trust from Original Lender to the

14  Trust).

15                  b.   Plaintiff's Claims

16      In light of foregoing analysis, the Court turns to each of

17  Plaintiff's four causes of action.   Plaintiff's first cause of

18  action is a claim for breach of contract.   Specifically,

19  Plaintiff alleges that Defendants have breached the contract

20  consisting of "Plaintiff's deed of trust, and the note it

21  supports."   Compl. ¶ 29.   Although not entirely clear from the

22  Complaint, it appears that Plaintiff's breach of contract cause

23  of action is grounded in two distinct claims.   First, Plaintiff

24  alleges that Defendants "materially breached the contract's

25  conditions precedent as codified at C.F.R. § 203.606(a) by:

26  lacking contractual authority to declare . . . a breach and

27  falsely declaring a breach where none existed."   Compl. ¶ 33

28  (citing Code of Fed. Reg. § 203.606).   Section 203.606(a) of the

                                    12

1   Code of Federal Regulations ("C.F.R."), cited by Plaintiff,

2   provides for certain procedural safeguards which must be followed

3   by a lender, prior to foreclosing on a property.  However,

4   Section 203.606(b) provides that those safeguards need not be met

5   "if the property is owned by a corporation or a partnership."

6   C.F.R. § 203.660(b)(4).  As Borrower was a limited liability

7   company, and not a private individual, the procedural safeguards

8   set forth in C.F.R. § 203.660(a) do not apply.  The first basis

9   for Plaintiff's breach of contract claim is without merit.

10       As a second basis for his breach of contract claim,

11   Plaintiff alleges that "Defendants materially breached the

12   contract by failing to acquire a valid beneficial interest in

13   Plaintiff's loan prior to executing a settlement agreement with

14   Plaintiff."  Compl. ¶ 36.  As discussed above, the plain terms of

15   the PSA foreclose any argument that the Trust – or Defendant

16   Owner, as its eventual successor-in-interest – "fail[ed] to

17   acquire a valid beneficial interest in Plaintiff's loan."  Compl.

18   ¶ 36.  Moreover, to the extent that Plaintiff's breach of

19   contract claim relates to an alleged breach of the PSA, Plaintiff

20   lacks standing to make this claim.  See supra at 9-10.  For all

21   of these reasons, Plaintiff has failed to state a claim for

22   breach of contract, and Defendants' motion to dismiss Plaintiff's

23   first cause of action is GRANTED WITHOUT LEAVE TO AMEND.  See

24   Sayegh v. John Enright, Inc., 473 F. App'x 605 (9th Cir. 2012)

25   (denial of leave to amend proper if amendment would be futile).

26       Plaintiff's second cause of action alleges a violation of

27   the Equal Credit Opportunity Act ("ECOA"), codified at 15 U.S.C.

28   § 1691; Compl. ¶ 42.  The ECOA protects those applying for credit

13

1  from discrimination, by prohibiting creditors from taking

2  "adverse actions" for discriminatory reasons.  Plaintiff has

3  failed to allege that Defendants acted with a discriminatory

4  motive, nor does he explain how he was subjected to an adverse

5  action, other than a barebones allegation that Defendants

6  "substantially and materially violated Plaintiff's rights under

7  the ECOA by revoking and changing the terms of an existing credit

8  arrangement without cause."  Compl. ¶ 45.  Plaintiff's

9  explanatory allegation that "Plaintiff points to the Exhibits

10  submitted to this court (Plaintiff's Ex's. 1-3) as proffered

11  evidence of these material violations" is not helpful.  Compl. ¶

12  45.  These exhibits (two assignments of a deed of trust, and

13  notice of default) do not, on their face, suggest any

14  discriminatory conduct nor do they explain how Defendants' action

15  constituted a violation of the ECOA.  As Plaintiff does not

16  propose any additional allegations that would save this claim,

17  Defendants' motion to dismiss Plaintiff's second cause of action

18  is GRANTED WITHOUT LEAVE TO AMEND.

19      Plaintiff's third cause of action alleges a violation of the

20  Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. 1681.

21  Compl. ¶ 50.  Plaintiff alleges that Defendants breached their

22  duties under the FCRA to "conduct a reasonable investigation of

23  information on a consumer's credit contract when put on notice by

24  the consumer that false information was being used in recorded

25  instruments."  Compl. ¶ 52.  Plaintiff's allegations necessarily

26  rely on the presence of false information in his Loan Documents

27  or the Notice of Default.  Although Plaintiff does not

28  specifically allege what he believes this "false information" to

1   be, it is reasonable to infer from the remainder of Plaintiff's

2   allegations that he believes any representation that Defendant

3   Owner has a beneficial interest in the Loan is false.  However,

4   as discussed at length above, Plaintiff's challenge to the 2004

5   transfer is meritless.  Accordingly, any representation that

6   Defendant Owner has a beneficial interest in the Loan is not

7   false, and Plaintiff has failed to state a claim for violation of

8   the FCRA.  Defendants' motion to dismiss Plaintiff's third cause

9   of action is GRANTED WITHOUT LEAVE TO AMEND.  See Sayegh v. John

10  Enright, Inc., 473 F. App'x 605 (9th Cir. 2012) (denial of leave

11  to amend proper if amendment would be futile).

12       Plaintiff's fourth cause of action alleges that Defendants

13  engaged in fraud by "publish[ing] purported facts contained as

14  recitals within the false instruments (NOD and assignment of

15  deed) . . . that are false."  Compl. ¶ 58.  Again, Plaintiff's

16  claim of falsity relies on his position that "Defendant did not

17  acquire beneficial interest in Plaintiff's loan as a result of

18  the sham assignment of deed of trust."  Compl. ¶ 58.  As

19  Plaintiff's challenge to the 2004 transfer is without merit, he

20  has failed to establish that Defendants made a "false

21  representation, concealment or nondisclosure," an essential

22  element of fraud.  Lazar v. Superior Court, 12 Cal.4th 631, 638

23  (1996).  Accordingly, Plaintiff has failed to state a claim for

24  fraud, and Defendants' motion to dismiss Plaintiff's fourth cause

25  of action is GRANTED WITHOUT LEAVE TO AMEND.  See Sayegh v. John

26  Enright, Inc., 473 F. App'x 605 (9th Cir. 2012) (denial of leave

27  to amend proper if amendment would be futile).

28            c.   Plaintiff's Remaining Arguments

1   In opposing Defendants' motion to dismiss, Plaintiff appears

2  to challenge the Court's jurisdiction over the parties.  Opp. to

3  MTD at 2.  Specifically, Plaintiff notes that he "hereby objects

4  to this court's subject matter jurisdiction over all Defendant

5  Parties [and that] Defendants are invoking the power of the court

6  through a motion and all Parties lack standing to move this

7  court."  Opp. to MTD at 2.  To the extent that Plaintiff is

8  challenging the Court's jurisdiction, such an argument is

9  improperly before the Court, and is more appropriately made in a

10 motion to dismiss or a motion to remand.  Regardless, Plaintiff's

11 argument is without merit.  As discussed in Defendants' Notice of

12 Removal, the Court has both diversity and federal question

13 jurisdiction over Plaintiff's claims.  Notice of Removal ¶¶ 9-25.

14   Returning to the merits, Plaintiff also argues that the 2004

15 transfer was invalid because "Defendants have offered no proof of

16 valuable consideration in either of the purported assignments of

17 the deed[.]"  Opp. to MTD at 15.  As Plaintiff correctly notes,

18 both assignments of the Deed of Trust provide that consideration

19 has passed from the Assignee to the Assignor.  Compl., Ex. 1

20 (Assignment of Deed of Trust from Original Lender to Trust,

21 providing that the assignment is made "for good and valuable

22 consideration"); Compl., Ex. 2 (Assignment of Deed of Trust from

23 Trust to Defendant Owner, providing that the assignment is made

24 "for value received").  However, just as Plaintiff lacks standing

25 to challenge the PSA, Plaintiff lacks standing to challenge

26 either Assignment of Deed of Trust.  As he is neither a party nor

27 a third-party intended beneficiary to either assignment,

28 Plaintiff cannot enforce the "consideration" requirement

1  contained therein.

2       Finally, Plaintiff extensively cites provisions of the

3  Uniform Commercial Code ("UCC") and New York Estate, Powers and

4  Trusts Law ("New York EPTL").  Opp. to MTD at 11-12 (citing the

5  UCC); Opp. to MTD at 13 (citing N.Y. Est. Powers & Trusts Law §

6  7-2.4).  Plaintiff argues that the 2004 transfer violated both of

7  these codes.  However, this argument ultimately depends on an

8  interpretation of the PSA that the Court has rejected: The UCC

9  and the New York EPTL are only violated if the PSA itself is

10 violated.  As Plaintiff notes, the "PSA terms trump the normal

11 Article 3 and 9" provisions in the UCC.  Opp. to MTD at 12.

12 Similarly, the New York EPTL merely provides that the act of a

13 trustee is void if it is taken "in contravention of the trust."

14 N.Y. Est. Powers & Trusts Law § 7-2.4.  Thus, these arguments

15 fail for a familiar reason: the express terms of the PSA

16 contradict Plaintiff's position that the assignment from Original

17 Lender to the Trust was invalid.  Accordingly, Plaintiff's

18 reliance on the UCC and the New York EPTL is misplaced.

19            2.   Defendants' Motion to Expunge Lis Pendens

20      Defendants move the Court to expunge the lis pendens on

21 Stockdale Tower.  Mot. to Expunge at 1.  In brief, Defendants

22 argue that the lis pendens must be expunged because Plaintiff has

23 failed to establish the "probable validity" of the real property

24 claim upon which the lis pendens is based.  Mot. to Expunge at

25 10.  Plaintiff filed a *pro forma* opposition to Defendants'

26 motion, which contains the same arguments, verbatim, made in

27 opposition to Defendants' motion to dismiss, and does not

28 separately address Defendants' motion to expunge.  See generally

1  Opp. to Expunge.

2      California Code of Civil Procedure § 405.32 provides that

3  the Court "shall order that the [lis pendens] be expunged if the

4  court finds that the claimant has not established by a

5  preponderance of the evidence the probable validity of the real

6  property claim."  Cal Code Civ. Proc. § 405.32.  Thus, in

7  evaluating Defendants' motion to expunge, the Court must look to

8  the merits of Plaintiff's claims.  As the Court has dismissed

9  each of Plaintiff's claims without leave to amend, it follows

10  that Plaintiff "has not established by a preponderance of the

11  evidence the probable validity" of his real property claim.

12  Accordingly, Defendants' motion to expunge is GRANTED.

13

14

15

16          3.   Counter-Defendants' Motions to Dismiss

17      Counter-Defendants[3] (Terry Moreland and Peggy Moreland) move

18  to dismiss Counter-Claimant's complaint against them.  Doc. #19;

19  Doc. #34.  The bulk of Counter-Defendants' motion is devoted to

20  re-stating the same arguments made in opposition to Defendants'

21  motion to dismiss and motion to expunge.  Not only are these

22  arguments based on a flawed interpretation of the PSA and

23  relevant case law, they are also misplaced in a motion to

24  dismiss.  To the extent that Counter-Defendants argue that

25  "disputed facts cannot be used as a set of facts that would allow

26

27  [3] Terry Moreland and Peggy Moreland bring separate motions to
dismiss.  As these motions are identical in substance and nearly
28  identical in form, they will be addressed collectively.

1   this court to base a right upon which relief may be granted to

2   [Counter-Claimant]," this argument is improper in a motion to

3   dismiss, where the Court must take the non-moving party's

4   allegations as true.  Scheuer v. Rhodes, 416 U.S. 232, 236

5   (1974); Ctr-Ds.' MTD at 10.  As such, Counter-Defendants'

6   argument that "the Settlement Agreement may, in fact, be judged

7   void" does not warrant dismissal of the Counter-Complaint.

8   Accordingly, the vast majority of Counter-Defendants' memorandum

9   of law, which rehashes their position on why the 2004 transfer

10  was ineffective, does not support their motion.

11       On the last two pages of their briefs, Counter-Defendants

12  briefly address each of Counter-Claimant's causes of action.

13  However, their argument is limited to the cursory statement –

14  repeated with regard to each of Counter-Claimant's claims – that

15  the "claim is subject to determination of validity and legality

16  of Settlement Agreement and may be deemed void" by the Court.

17  Ctr.-Ds.' MTD at 12-13.  This argument – in addition to being

18  foreclosed by the Court's foregoing analysis – does not address

19  the elements of each individual cause of action, or otherwise

20  explain why Counter-Claimant has failed to state a claim for

21  relief.  Accordingly, Counter-Defendants have failed to satisfy

22  their burden on a motion to dismiss.

23       Finally, to the extent that Counter-Defendants challenge the

24  Court's subject matter jurisdiction over the Counter-Complaint,

25  this argument is not adequately developed.  It is unclear how

26  Counter-Claimant's alleged failure to offer "proof of valuable

27  consideration in either of the purported assignments of the deed

28  . . . confirms a complete lack of constitutional or prudential

1   standing to bring" its complaint.  Opp. to MTD at 9.  Regardless,

2   Counter-Claimant has adequately alleged subject matter

3   jurisdiction for its state law claims under 28 U.S.C. § 1332, as

4   complete diversity exists among the parties, and the amount in

5   controversy exceeds $75,000.  Counter-Complaint ¶¶ 1-6.  For all

6   of the above reasons, Counter-Defendants' motion to dismiss is

7   DENIED.

8

9                         III.   ORDER

10      For the reasons set forth above, the Court GRANTS WITHOUT

11  LEAVE TO AMEND Defendants' Motion to Dismiss, GRANTS Defendants'

12  Motion to Expunge Lis Pendens, and DENIES Counter-Defendants'

13  Motions to Dismiss.

14      IT IS SO ORDERED.

15  Dated: April 15, 2015

16                                    _____

17                                    JOHN A. MENDEZ,
                                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28