UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY L. MORELAND,<br><br>            Plaintiff,<br><br>       v.<br><br>U.S. BANK, N.A., AS TRUSTEE FOR LB-USB COMMERCIAL MORTGAGE TRUST 2004-C6 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-C6; LB-USB 2004-C6 STOCKDALE OFFICE LIMITED PARTNERSHIP; LB-USB STOCKDATE OFFICE GP; LNR PARTNERS CALIFORNIA MANAGER, LLC; LNR PARTNERS, LLC, and DOES 1-10, inclusive,<br><br>            Defendants. | No.  1:14-cv-01836-JAM-JLT<br><br>ORDER GRANTING COUNTERCLAIMANT'S MOTION FOR DEFAULT JUDGMENT |
| LBUSB 2004-C6 STOCKDALE OFFICE LIMITED PARTNERSHIP,<br><br>            Counter-Claimant,<br><br>       v.<br><br>TERRY L. MORELAND; PEGGY J. MORELAND,<br><br>            Counter-Defendants. | |

Counter-defendants Terry and Peggy Moreland ("the Morelands") agreed to personally repay a loan secured by real property in the event of a default. When default occurred, they

1

refused to pay and accused Counter-claimant LBUSB 2004–C6 Stockdale Office Limited Partnership ("LBUSB") as well as the original lender and other financial institutions of improperly securitizing the loan.  The resulting barrage of litigation has now been reduced to a counterclaim against the Morelands seeking the loan payments they indisputably agreed to pay.  The Morelands filed no answer to the counterclaim and have failed to offer any valid defense.  The Court now grants default judgement for LBUSB and awards damages in the amounts described herein.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In 2004, UBS Real Estate Investments, Inc. made a loan to Stockdale Tower I, LLC ("Stockdale") in the amount of $24,000,000 ("the loan"). See Counterclaim ¶ 9; Kerr Decl. Exh. 1.  The Morelands personally guaranteed that loan.  See Kerr Decl. Exh. 4.  In connection to the loan, Stockdale executed a Deed of Trust, which encumbered Stockdale Tower, a commercial office building located at 5060 California Avenue, Bakersfield, California.  Counterclaim ¶¶ 5-6; Kerr Decl. Exh.1 .  In June 2010, the rights under the loan were transferred to LBUSB 2004-C6 Stockdale Office Limited Partnership ("LBUSB"). Counterclaim ¶¶ 18-19, Exhs. 5-10.

When Stockdale defaulted, LBUSB caused a Notice of Default to be recorded. See Counterclaim ¶¶ 20-22; LBUSB's Request for Judicial Notice ("RJN") Exh. 2.  In response to Stockdale's

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for December 16, 2015.

filing for chapter 11 bankruptcy, LBUSB entered into an agreement with Stockdale and the Morelands in which LBUSB agreed to hold off on foreclosure if the loan was paid off by January 2013. Counterclaim ¶¶ 23-24. Stockdale was unable to pay, and the property entered foreclosure in February 2013. Counterclaim ¶ 26. LBUSB bought the property at foreclosure for $20,000,000. Id. This amount was insufficient to cover the outstanding principal, accrued interest and fees on the loan. Counterclaim ¶¶ 26-28; Kerr Decl. ¶ 25.

Litigation ensued. The Morelands claimed that the securitization and transfer of the loan and the encumbered property were improper and void. LBUSB in turn sought payment from the Morelands under the guarantee. By August 2013, LBUSB and the Morelands had ostensibly resolved the matter through a Settlement Agreement and Mutual Release. Counterclaim ¶ 30; Exh. 13. In the end, LBUSB intended to sell the property. See Counterclaim ¶¶ 31, 33. The settlement agreement permitted the Morelands to participate in the sale, but the agreement specifically prohibited them from "do[ing] anything to interfere with the Sale and/or prevent [LBUSB] from obtaining the maximum sale price available for the Property." Counterclaim ¶ 31. The mutual release of liability provision of the agreement also stated that "the release shall have no force and effect and will be automatically revoked should [the Morelands] or any of their agents, employees, assigns or affiliates interfere with the Sale." Counterclaim ¶ 32.

Bidding was set to open on October 20, 2014. Counterclaim ¶ 35; Hanson Decl. ¶ 6. But on October 14, 2014, the Morelands

1  filed a notice of lis pendens and a new lawsuit in Kern County
2  Superior Court.  See Counterclaim ¶¶ 36-37; Hanson Decl. ¶ 5.  On
3  October 16, the Morelands' counsel notified LBUSB, LBUSB's broker
4  for the sale, and the online bidding platform where the property
5  was listed, demanding that all prospective buyers be notified
6  about the lis pendens.  Counterclaim ¶ 38; Hanson Decl. ¶ 5.  The
7  online platform posted the lis pendens and the Morelands' new
8  complaint on the website.  See Counterclaim ¶ 39.  Bidding opened
9  as scheduled, but "was characterized by limited bidding and below
10 market offers."  Counterclaim ¶ 40.  LBUSB was unable to sell the
11 property, in large part because it could not convey insurable
12 title.  See Counterclaim ¶ 40-41; Hanson Decl. ¶¶ 6-7.

13      LBUSB thereafter removed the Kern County action to this
14 Court (Doc. #1) and filed a counterclaim against the Morelands
15 (Doc. #9).  The Counterclaim asserted breach of guaranty, breach
16 of settlement agreement, slander of title, and cancellation of
17 cloud on title.  This Court eventually granted LBUSB's motion to
18 expunge lis pendens as well as its motion to dismiss the
19 Morelands' complaint (Doc. #56).  In the same order, the Court
20 denied the Morelands' motion to dismiss the counterclaim.

21      Following that order, the Morelands failed to file an
22 answer, so LBUSB requested entry of default (Doc. #59).  The
23 Clerk entered default in May 2015 (Doc. #61).

24      More than a month later, the Morelands moved to set aside
25 the default (Doc. #65).  The Court denied the motion following a
26 hearing on August 19, 2015, indicating that the Morelands'
27 proposed answer contained no valid defense to the counterclaim
28 (Doc. #68).  LBUSB now moves for default judgment and an award of

damages (Doc. #71).  The Morelands have filed an opposition (Doc. #80).

## II.  OPINION

### A.  Legal Standard

When a responding party (here, a Counter-defendant) fails to file an answer, the clerk "must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default is entered, the complaining party (here, a counterclaimant) may apply to the Court for a default judgment.  See Fed. R. Civ. P. 55(b)(2).  The Court has discretion to order default judgment.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising that discretion, the Court "may" consider the following factors:

> (1) the possibility of prejudice to the [counterclaimant],
> (2) the merits of [counterclaimant's] substantive claim,
> (3) the sufficiency of the [counterclaim],
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon ordering a default judgment, the court determines damages.  See Fed. R. Civ. P. 55(b)(2).  In making that determination, the court takes as true all factual allegations made in the prevailing party's pleading, except for allegations concerning the amount of damages owed.  Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).  The prevailing party must show that there is "a basis" for the amount of damages through "[a]ffidavits or other documentary evidence."  Molina v.

5

1    Creditors Specialty Serv., Inc., 2010 WL 235042, at *1-*2 (E.D.
2    Cal. Jan. 21, 2010) (citing Transatlantic Marine Claims Agency,
3    Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.1997)); see
4    Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D.
5    494, 498-99 (C.D. Cal. 2003) ("Plaintiff's burden in 'proving up'
6    damages is relatively lenient. . . . [A] default judgment must
7    be supported by specific allegations as to the exact amount of
8    damages asked for in the complaint."). The Court may also award
9    attorneys' fees if permitted by statute or prior agreement of the
10   parties. Willamette Green Innovation Ctr., LLC v. Quartis
11   Capital Partners, 2014 WL 5281039, at *15 (N.D. Cal. Jan. 21,
12   2014) report and recommendation adopted, 2014 WL 5260921 (N.D.
13   Cal. Apr. 10, 2014) (citing Alyeska Pipeline Serv. Co. v.
14   Wilderness Soc'y, 421 U.S. 240, 257 (1975)).
15        B.   Judicial Notice
16        LBUSB seeks judicial notice of eight exhibits (Doc. #76).
17   Four are documents that have been recorded at the Kern County
18   Recorder's Office: a Substitution of Trustee dated July 26, 2010,
19   a Notice of Default dated July 30, 2010, a Notice of Trustee's
20   Sale dated March 28, 2011, and a Deed of Sale dated February 4,
21   2013.  The remaining four are documents filed in this Court or
22   the bankruptcy court: Stockdale's bankruptcy petition, motions
23   and orders filed in this case, the transcript of this Court's
24   hearing on the motion to set aside default, and a copy of the
25   docket.  All these documents are in the public record and could
26   not reasonably be disputed. Fed. R. Evid. 201; see Santa Monica
27   Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2
28   (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 662, 689

(9th Cir. 2001). The Court therefore takes judicial notice of each document.

    C.    Evidentiary Objections

The Morelands make several evidentiary objections (Docs. ##80-2, 80-3, 80-4) to the declarations of Anne Edwards, Kevin Hanson, and Don Kerr, which LBUSB offered in support of its motion for default judgment.

    1.    Edwards Declaration

The Morelands first contend that "Ms. Edwards attempts to introduce facts not in evidence." Opposition to Declaration of Anne Edwards at 3. These facts supposedly include that U.S. Bank "has an equitable ownership interest in the subject property by assignment;" that LBUSB also "has equitable rights as the beneficiary"; that the "assigned interests were secured by [the] real property"; and that a merger with LaSalle Bank "included [the] real property as an income stream." See id.

These objections suffer from a number of misunderstandings about the inquiry at default judgment. First of all, the counterclaim contains factual allegations describing the ownership of the loan, the use of the property to secure the loan, and the assignment of that loan. See Counterclaim ¶¶ 1-5, 8-19. Because the Morelands never filed an answer, they admitted these factual allegations and the Court now takes them as true. Molina, 2010 WL 235042, at *1 ("Entry of default effects an admission of all well-pleaded allegations of the complaint by the defaulted party.") (citing Geddes, 559 F.2d 557).

Second, because the Court takes the counterclaim's facts as true, there is no inquiry about what facts are "in evidence." An

1   objection that a declarant's statement assumes facts not in
2   evidence is not a valid objection in this context.
3       Even if these were not the rules, this Court has already
4   decided that the transfers of the loan and use of the property as
5   security were proper, and that LBUSB has an interest in the
6   property.  <u>See</u> Order Granting Defendant's Motion to Dismiss at
7   11-18.  The Court sees no reason to revisit its prior
8   conclusions.  The objections are overruled.
9       The Morelands make further objections to Ms. Edwards'
10  declaration apparently on the basis of foundation.  They argue
11  that she "does not aver or state that she has ever worked for
12  Bank of America, N.A. or for U.S. Bank, N.A. in any capacity as
13  it relates to the subject real property."  Opposition to
14  Declaration of Anne Edwards at 3.
15      The Morelands do not explain why Ms. Edwards' declaration is
16  deficient without an allegation that she worked at one of these
17  banks.  The Court finds such an allegation unnecessary.  The
18  subject matter of her declaration is the progress of the
19  litigation and the amount of fees expended in clearing the cloud
20  on title on behalf of LBUSB.  Ms. Edwards states that she is a
21  principal of the law firm that represents LBUSB.  Edwards' Decl.
22  ¶ 1.  This allegation provides sufficient foundation of her
23  knowledge about the matters declared, so the Court overrules the
24  Morelands' objection.
25      The final objections restate the Morelands' contention that
26  LBUSB does not have an interest in the property and that LBUSB
27  "has not been harmed as a direct and proximate result of [the
28  Morelands'] acts or omissions."  Opposition to Declaration of

8

1  Anne Edwards at 3.  As discussed above, the Morelands already
2  admitted to the factual issues surrounding LBUSB's interest in
3  the property and the harm the Morelands' actions and inaction
4  caused. Moreover, this Court has already decided these issues
5  against the Morelands on the merits.  These objections are
6  therefore overruled.

          2.    <u>Hanson Declaration</u>

8     The Morelands challenge Mr. Hanson's declaration on the
9  bases that he (1) "does not aver or state that he works for
10 [LBUSB] in any capacity"; (2) "does not state that he received
11 transmission by a person with personal knowledge of the
12 'documents'"; and (3) "does not identify exactly what the term
13 'loan documents' means or encompasses in its scope."  Opposition
14 to Declaration of Kevin Hanson at 2.

15     As to the first objection, Mr. Hanson declares that he works
16 for LNR, the servicer used by LBUSB, and that he was personally
17 responsible for handling the marketing of the property for the
18 attempted October 2014 sale.  Hanson Decl. ¶¶ 1, 3, 5.  The fact
19 that he worked for LNR in this role provides adequate foundation
20 for the facts his declaration contains.  The fact that he does
21 not also work directly for LBUSB is not relevant.

22     The Morelands' second objection about "transmission" of
23 "documents" appears to relate to the second paragraph of Mr.
24 Hanson's declaration in which he purports to authenticate
25 documents as "Business Records."  <u>See</u> Hanson Decl. ¶ 2 ("All
26 Business Records for the Property have been maintained in the
27 ordinary course of business . . . and were prepared and/or
28 maintained in accordance with standard industry practice at or

9

1  around the time of the events described therein by or from a
2  person with personal knowledge of such information."). The Court
3  cannot determine whether the documents are properly
4  authenticated, because Mr. Hanson does not specify what documents
5  he is talking about. No documents are attached to his
6  declaration. The Morelands' objection is therefore moot.
7     The final objection relates to the term "loan documents,"
8  but that term does not appear in Mr. Hanson's declaration. The
9  objection is overruled.

          3.   <u>Kerr Declaration</u>

11    As with the previous declarants, the Morelands challenge Mr.
12 Kerr's knowledge of the transfer and securitization process. <u>See</u>
13 Opposition to Declaration of Don Kerr at 3-6. For the reasons
14 stated above, these objections are overruled.
15    Each of the other objections to this declaration also fail.
16 The Morelands first argue that Mr. Kerr has not adequately
17 described his role and the timeframe of his employment. <u>Id.</u> at
18 2. However, Mr. Kerr does explain that he is an "asset manager"
19 for LNR and that as part of this role he was personally
20 responsible for "enforcing the rights of [LBUSB]" under the loan.
21 Kerr Decl. ¶¶ 1, 2 4. The fact that he left out a date in the
22 first paragraph of his declaration is sloppy, but not fatal
23 because he states in paragraphs 2 and 4 that he was employed with
24 LNR at the time he worked on the loan at issue in this case. The
25 objections are overruled.
26    Next, the Morelands challenge the basis of Mr. Kerr's
27 knowledge about documents because he "does not state that he
28 received records from Wells Fargo from a person with knowledge of

10

the facts contained therein." Opposition to Declaration of Don Kerr at 5. However, his declaration establishes that he does have adequate knowledge of the documents and in fact describes in detail how the documents were created. See Kerr Decl. ¶¶ 2-5, 10-12, 18, 27-30.

The Morelands' final objection is that the declaration does not properly authenticate electronically-generated business records as described in In re Vee Vinhnee, 336 B.R. 437 (9th Cir. B.A.P. 2005). As a preliminary matter, the Court notes that only Exhibits 12 and 13 (a summary of the outstanding balance related to the loan and the "Payoff Statement," respectively) were electronically generated. The other exhibits contain documents recorded in the Kern County Recorder's Office, of which this Court has already taken judicial notice, or contracts between the parties or their predecessors, which were not electronically generated. As to Exhibits 1-11, the objection is therefore overruled. The Court also overrules this objection as to Exhibits 12 and 13, because the declaration adequately establishes a foundation. In re Vee Vinhnee concerns authentication "for results of a [computer] process or system." 336 B.R. at 446. Mr. Kerr's declaration describes at length how the exhibits were created, and indicates that both were compiled by Mr. Kerr or at his direction. See Kerr Decl. ¶¶ 25-30. This foundation is adequate and the Court overrules the objection.

///

///

    D.    <u>Analysis</u>

        1.    <u>Exercise of Discretion to Grant Default Judgment</u>

1    "Courts generally disfavor default judgments, [] especially
2    those involving large sums." Molina, 2010 WL 235042, at *1
3    (citing In Re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir.
4    1993) and 10A C. Wright, A. Miller & M. Kane, Federal Practice &
5    Procedure: Civil 3d § 2681).  Despite the millions of dollars at
6    issue in this case, the Court concludes that the unique facts of
7    the case warrant a default judgment.
8        In reaching this conclusion, the Court has considered the
9    seven Eitel factors, enumerated above.  See Eitel 782 F.2d at
10   1471-72.  As discussed at the hearing on August 19 at which the
11   Court denied the Morelands' motion to set aside the default,
12   LBUBS's counterclaim is meritorious and the Morelands were unable
13   to offer any valid defense – even when given the opportunity to
14   do so.  Indeed, the counterclaim establishes through well-pleaded
15   facts that Stockdale defaulted on the $24 million mortgage and
16   the Morelands are liable for that default because they personally
17   guaranteed the loan.  Counterclaim ¶¶ 9-14, 21-26.  Because
18   LBUSB's claim is meritorious, the second, third, and fifth
19   factors weigh in favor of granting a default judgment.
20       Also discussed at that hearing was the fact that the failure
21   to answer was culpable conduct on behalf of the Morelands.  It
22   was not excusable neglect.  The sixth factor therefore weighs in
23   LBUSB's favor.
24       The Court also concludes that LBUSB would suffer prejudice
25   if judgment were not entered in its favor (the first Eitel
26   factor).  The facts, evidence, and history of this case
27   overwhelmingly show that the Morelands agreed to pay and
28   currently owe a significant sum of money and have no valid

1  defense to liability.  If the Court were to deny judgment, LBUSB
2  would be deprived of the remedy to which it is entitled and the
3  Morelands would receive a windfall.  See Truong Giang Corp. v.
4  Twinstar Tea Corp., 2007 WL 1545173, at *3 (N.D. Cal. May 29,
5  2007) (finding prejudice because "[i]f the Court were to deny
6  [plaintiff's] motion for default judgment, [plaintiff] would have
7  no other recourse for recovery"); Walters v. Shaw/Guehnemann
8  Corp., 2004 WL 1465721, at *2 (N.D. Cal. Apr. 15, 2004) ("To deny
9  plaintiffs' motion would leave them without a remedy.  Prejudice
10 is also likely in light of the merits of their claim.").

11       The Court acknowledges the strong policy in favor of
12 deciding cases on the merits (the seventh Eitel factor), but
13 concludes that this policy is not contravened here.  This case
14 would almost certainly resolve in the same way even if the
15 Morelands had filed their answer and continued in the litigation,
16 because the case is devoid of a meritorious defense.

17       This leaves only the fourth factor – the amount of money at
18 stake.  Although this factor weighs towards denying default
19 judgment, the Court concludes that the other six factors outweigh
20 this one.  The Court therefore exercises its discretion to grant
21 a default judgment.

22            2.   Damages

23     Having concluded that a default judgment is proper, the
24 Court next turns to the appropriate amount of damages.  As
25 explained above, the Court makes this determination taking all
26 well-pleaded facts in the counterclaim as true, except as to the
27 amount of damages.  To arrive at an amount, the Court looks to
28 the evidence offered by LBUSB.  The Morelands, for their part,

offered no evidence.

In fact, besides their evidentiary objections, the Morelands have offered no arguments in opposition to LBUSB's calculation of damages or the evidence supporting it. The bulk of the Morelands' motion is instead devoted to re-arguing the issue of whether LBUSB has a valid interest in the property. As explained above, the Morelands have admitted on default that LBUSB has such an interest and the Court previously decided that issue in LBUSB's favor anyway.

Despite the absence of any opposition to LBUSB's calculation of damages, the Court has conducted its own examination of the evidence and now concludes that it provides an adequate basis to award damages to LBUSB in the amounts enumerated below.

### a. Outstanding Loan Balance

The outstanding principal on the loan is $2,251,428.76. See Kerr Decl. ¶ 25. Interest is also outstanding. Since February 2, 2013 (the day following the trustee's sale), interest has accrued on the outstanding balance at a rate of $3,406.03 per day. Kerr Decl. ¶ 26; id. Exh. 12; id. Exh. 1 ¶¶ 1-4.

### b. Yield Maintenance Premium

The loan contract provided that in the case of a foreclosure sale, a "proportionate Yield Maintenance Premium" "shall" be paid to compensate the lender for the loss of future monthly debt payments. See Kerr Decl. Exh. 2 ¶¶ 3(c)(ii), 48. Based on the date of default and the loan balance at that time, the amount of the premium in this case is $1,971,757.89. See Kerr Decl. Exhs. 12-13.

### c. Other Fees and Penalties Related to the Loan

1    The loan contract also provided for payment of late fees,
2  trustee's fees, title expenses, and costs for environmental
3  reports and property inspections.  See Kerr Decl. ¶¶ 25-27.  The
4  evidence shows that these fees and costs totaled $421,304.42.
5  See id. ¶ 25.

####        d.   Attorneys' Fees

7    LBUSB seeks attorneys' fees to reimburse it for the expenses
8  incurred in eliminating the cloud on title.  Mot. at 13-14.
9  LBUSB may recover reasonable litigation expenses as damages
10 pursuant to its slander of title claim.  Compass Bank v.
11 Petersen, 886 F. Supp. 2d 1186, 1198 (C.D. Cal. 2012) ("[I]t is
12 well-established that attorney fees and litigation costs are
13 recoverable as pecuniary damages in slander of title causes of
14 action when . . . litigation is necessary to remove the doubt
15 cast upon the vendibility or value of plaintiff's property.")
16 (alteration in original) (quoting Sumner Hill Homeowners' Ass'n,
17 Inc. v. Rio Mesa Holdings, LLC, 205 Cal.App.4th 999, 1030
18 (2012)); Spencer v. Harmon Enterprises, Inc., 234 Cal.App.2d 614,
19 622 (1965).

20    LBUSB requests a total of $107,516.50 in attorneys' fees.
21 The Morelands have not argued that this sum is inappropriate or
22 unreasonable.  Nonetheless, the Court has reviewed the hours
23 billed and tasks completed for reasonableness and determines that
24 it is unreasonable to have billed this amount for just over six
25 months of work.  See Leary Decl. Exh. 1 (enumerating fees
26 accumulated between October 15, 2014 and April 17, 2015); Edwards
27 Decl. Exh. 4 (same).  Breaking down the various tasks reveals an
28 excessive amount of time spent by multiple attorneys.  For

1  example, two individuals billed a total of 22.1 hours to
2  "review," "finaliz[e]," "proofread," and "cite-check" the motion
3  to expunge lis pendens – completely separate from the hours spent
4  researching and drafting the motion.  See Edwards Decl. Exh. 4.
5  Some of the hourly rates are also unreasonable for this district.
6  For example, the Court does not find any adequate justification
7  for Ms. Leary's hourly rate of $555.00 per hour.  Overall, the
8  Court reduces the fees by twenty percent.  See In re Smith, 586
9  F.3d 1169, 1174 (9th Cir. 2009) (permitting courts to reduce fees
10 by a percentage across-the-board rather than considering each
11 task hour-by-hour).  Reducing the amount requested by twenty
12 percent, the Court awards reasonable fees of $86,013.20.

| Type of Damages | Amount |
|---|---|
| Outstanding principal | $2,251,428.76 |
| Outstanding interest | $3,739,822.17 |
| Yield maintenance premium | $1,971,757.89 |
| Loan fees and penalties | $421,304.42 |
| Attorneys' fees | $86,013.20 |
|  | **TOTAL**: $8,470,326.44 |

18                     III.   ORDER
19     For the reasons set forth above, the Court enters default
20 judgment in favor of Counterclaimant LBUSB and awards
21 $8,470,326.44.   IT IS SO ORDERED.
22 Dated: February 4, 2016

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

16